Moncure, J.,
after stating the case, proceeded r
Several errors are assigned by the plaintiffs in errors in the proceedings and judgment, which I will proceed to notice in the order in which they are assigned.
The first is, that “ the court erred in overruling the demurrer to the declaration; because a joint bond cannot by law be taken, as each judgment debtor ought to enter into a separate bond with security.” I can see no reason and know of no authority why joint debtors, against whom judgment has been obtained and execution issued jointly, and who have been jointly arrested and committed to prison, may not jointly enter into a prison bounds bond. Indeed, the statute authorizing the bond to be given, plainly contemplates such a case, for its language is, “ If any person or persons, taken or charged in execution, shall enter ' into bond, &c., that he, she or they shall not depart or go out of the rules or bounds of the prison,” &c.
*172 The second error is, that “ the court erred in rejecting the pleas numbered 2, 3, 4 and 5.”
In support of this assignment of error, the counsel for the plaintiffs in error cited and relied on several cases in the Hew York reports ; which, with some other cases, and the course of legislation in that state in regard to escapes, it may be proper to notice somewhat in detail. When those cases were decided, the common law on the subject of escapes was the law of Hew York, except in some respects in which it had been altered by statute. Formerly it would seem that persons in custody on civil process in that state, had no right to go at large within the limits of the prison, without the permission of the sheriff, though they might do so with such permission. But by an act passed in 1801, (which appears to have been but a re-enactment of a law which was passed in 1793,) it was made the duty of sheriffs to permit all prisoners in custody on civil process to go at large within the limits, on their giving bond with security to keep the same; and the sheriff was authorized, in case he should discover the security to be insufficient, to confine the prisoner until other sufficient security was offered. 4 John. 49 ; 10 John. 577. After the passage of this act, it was decided that a sheriff might still permit a prisoner in execution to go within the liberties of the prison without taking security; and if the prisoner, without his knowledge, went beyond the limits, but returned again before suit brought, he was not liable for an escape : the limits of the liberties of the prison being considered as an extension of the walls of the prison, and a return within the limits of the same as a return within the prison ; and where no bond or security is taken by the sheriff, his right of recaption remaining in full force ,• and a voluntary return before suit brought being equivalent to a recaption, which will purge a negligent escape. Peters v. *173 Henry, 6 John. R. 121, decided in 1810. In the case of Tillman v. Lansing, 4 John. R. 45, decided in 1809, it was held that where a prisoner in execution, giving security to the sheriff, was allowed the liberties of the prison, and went beyond the limits and returned again, the sheriff had no power to restrain him; and that though this was neither a voluntary nor negligent escape, yet it was such an escape under the statute of 1801, as could not be purged by a voluntary return before suit brought, and rendered the sheriff liable in the first instance; and that he must resort to the security for his indemnity, as the bond was not made assignable. The court was of opinion that the sheriff, after having taken security, had no right to restrain the prisoner, should he see him at large, his remedy being upon the bond ; and that it was a breach of the condition of the bond for the prisoner to go beyond the limits, and could be no defence to him that he returned before suit brought against the sheriff. In the case of Bissell v. Kip, 5 John. R. 88, in 1809, it was decided that where a defendant in execution and admitted to the liberties of the prison, walked beyond the.limits knowingly and voluntarily, on the pretence of avoiding a bank of snow which obstructed his usual walk, it was an escape for which the sheriff was liable; and that where the limits were not defined by visible marks or boundaries, and the prisoner went beyond them into a building which was supposed to be within the limits, staid an hour and returned, it was an escape for which the sheriff was liable. In the case of Ballou v. Kip, 7 John. R. 175, in 1810, where the limits of the prison liberties were marked by no visible monuments, and the survey of them was vague and uncertain, and a prisoner, who had given bond to the sheriff for the liberties, without intending to go beyond them, went into a house within the reputed limits, but which proved not to be in the actual limits, and re *174 turned before suit brought, it was held that this, being an inadvertent and involuntary escape, and a- return-before suit brought, the sheriff was not liable. The case was distinguished from that of Tillman v. Lansing, which was considered as applying only to an escape voluntarily and knowingly made. By an act passed in 1809, prison bounds bonds were made assignable to the plaintiff in the execution, who was authorized to sue as assignee of the sheriff; and by an act passed in 1810, it was declared “ that nothing contained in the acts of 1801 or 1809 aforesaid, shall be so construed as to prevent any sheriff, in cases of escapes, from availing himself, as at common law, of a defence arising from a recaption on fresh pursuit, and a returning of the prisoner within the custody of such officer before an action shall be commenced for the escape.” In the case of Mandell v. Barry, 9 John. R. 234, in 1812, it was decided that the said act of 1810 was intended only for the relief of the officer when sued for an escape; and that therefore when an action was brought by the assignee of the bond against the original debtor and his sureties, a voluntary return after a voluntary escape, and before suit brought, was not a defence; and the assignee might recover the amount of the debt, in the original suit, though no suit had been brought against the sheriff for the escape. The court said the act “ was made to relieve the officer, who may be an innocent party, and not the original debtor, who bound himself to remain a true and faithful prisoner, and that he would in no wise escape. If he has willfully departed from the liberties, he has broken his engagement, and forfeited all just title to indulgence. The persons who became his sureties, (and who were probably indemnified by him,) must and ought to be equally responsible with the debtor, or otherwise the guard hereby intended against fraud, would be illusory and of no effect.” “ The fact *175 of how long the prisoner continued without the liberties, or to what distance he escaped, never can be material, when it is once ascertained that the escape was voluntary and intentional.” This decision of the Supreme court of New York was reversed by the Court of errors in Barry v. Mandell, 10 John. R. 562; in which it was held that the statutes relative to prison liberties had not altered the common law as to the liability of sheriffs for escapes, nor taken away their common law rights as to a fresh pursuit and recaption ; and if a prisoner goes beyond the liberties without the privity of the sheriff, to an action against him for an escape, he may plead recaption or voluntary return before suit brought, as he might do in an action for a negligent escape at common law; and this was the true construction of those statutes before the passage of the said act of 1810. The bonds given to sheriffs for the liberties are for his indemnity only, and neither the sheriff nor his assignee can recover on such bond without showing he is injured; and to an action on such bond by the sheriff or his assignee, it is a good plea in bar that the prisoner voluntarily returned before suit brought. But that, even if this were not so before the act of 1810, yet that act is so far a virtual repeal of the provisions of former acts ; for the recaption, on fresh pursuit, or voluntary return before action brought, being a good defence to the sheriff in an action against him for the escape, it is equally a good defence to the prisoner and his security in a suit against them by the sheriff or his assignee on the bond.
Thus stands the law of New York on all the cases referred to; and there can be no doubt but that the pleas rejected in this case, or some of them, would present good defences to the action, if the decision of the Court of errors, in the case last cited, were a binding authority and a correct exposition of the law *176 of this state. If the statutes of Virginia on the subjec^ of escapes were like the statutes of Hew York, which came under consideration in those cases, none those cases being binding authorities with us, we m*-§ht have to determine the relative respect which would be due to the decisions of the Supreme court (in which all of them but the last was decided) and the Court of errors of that state, in which case it would be remembered that some of the judges of the former were among the most profound that this country has ever produced. But it is enough to say that the statutes of the two states on the subject are entirely different; and that the cases in that state all concede, and those of them which would warrant the admission of any of the pleas which were rejected in this case are founded on the concession, that the prison bounds bond there was, when those cases were decided, a bond of indemnity to the sheriff. And it being settled that the giving of the bond did not affect his common law rights and liabilities, it followed, as a necessary consequence, that any plea which would be a good defence to an action against him for an escape, would be a good defence to an action on the bond, whether in the name of him or his assignee. In this state the prison bounds bond is not a bond of indemnity to the sheriff, and is, in effect, a very different instrument from the like bond in Hew York. There, the sheriff was responsible, if the security in the bond became insufficient after it was given, though good at that time; and therefore the sheriff had a right to require additional security if that first given became insufficient. Indeed, though the bond was assignable to the execution creditor, he was not bound to accept the assignment, but might, at his election, sue the sheriff for an escape, or sue on the bond as assignee of the sheriff. Here the sheriff has no power to prevent the escape of a debtor, who has taken the benefit of *177 the prison bounds. Lyle v. Stephenson, 6 Call 54; but it is the duty of the sheriff, when a person in execution escapes from the prison bounds, immediately obtain an escape warrant, and give notice thereof to the execution creditor, and assign to him the bounds bond, which he is obliged to receive; and the sheriff is then free from all liability, unless the security in the bond was insufficient at the time it was taken. The creditor may, at his election, proceed to retake the debtor if he can, or sue upon the bond for the recovery of his debt.” If the debtor be retaken and committed to jail, his securities are discharged from their bond. It is perfectly obvious therefore that the bounds bond here is not a mere bond of indemnity to the sheriff, but when it is assigned to the execution creditor, becomes an effectual security for the debt; and that none of the pleas which were rejected in this case, would be good pleas in bar of an action on such bond. It would be a good plea in bar of such an action, that the debtor was retaken and committed to jail under the escape warrant by, or at the instance of, the creditor; because the statute declares that the securities in that case shall be discharged. And it might also be a good plea in bar of such an action, that the debtor, after breaking the bounds, voluntarily returned to jail, and was therein confined with the approbation of the creditor, and with a knowledge on his part of the escape. This would seem to be the same defence in effect with that which the statute gives. But none of the rejected pleas are equivalent to either of these.
In the case of Crump v. Bennett, 2 Litt. R. 209, it was held that if a debtor committed to the prison rules depart thence, however innocently, from ignorance of the real boundaries, however short the distance and sudden his return, his bond is forfeited. That case was . decided in 1822, and is entitled to great weight, be *178 cause the statute law of Kentucky on the subject was then identical with our own. Some of the observations of the court in the case are very striking and appropriate. “ The prison rules,” they said, “are for the benefit of the debtor, and he is bound to take notice of and ascertain them if practicable, and must break them at his peril; and it does not lie well in his mouth to say, that without the consent or concurrence of the plaintiff in the execution, he had taken the rules, and yet was ignorant of them, and therefore had a right to go where he pleased. Besides, a departure without the rules, however small, is a breach of the letter of the bond. If the true line is departed from, it will soon become a puzzling question, how far he may progress without danger. If he can plead ignorance and want of intention, the extent of his knowledge and the quo animo with which he transgressed will soon become difficult questions for courts and juries, when the rule adopted by the court below is more certain and definite, and cannot be ramified into niceties, or embarrassed with numerous exceptions.”
The third error assigned is, that “the court erred in permitting the prison bounds bond to be assigned upon the trial of the cause after the jury were sworn, as the assignment of the instrument is an essential part of the plaintiff’s case, to enable him to institute and maintain the action.”
If an obligee of a bond or payee of a note endorse his name in blank thereon, and deliver it to another person for the purpose of assigning or endorsing it to him, the blank endorsement imports an authority to any Iona fide holder to write over the same a full assignment or endorsement to him, and in fact, without being filled up, may be regarded, for all purposes of pleading and evidence, as a full assignment or endorsement. Courts will consider that as done which may be done, and will not even require the formality of *179 writing out a full assignment or endorsement at the time of the trial. This is the uniform practice in regard to ordinary bonds and notes, and is convenient and legal. There is no difference between a prison bounds bond and an ordinary bond, in this respect. The law directs the sheriff to assign and deliver the bounds bond to the execution creditor, and obliges the latter to receive it. The bond in this case w.as delivered to the creditor with the sheriff’s name endorsed thereon in blank by his deputy, and was received by the creditor before the commencement of the suit. The assignment to the creditor was then complete, and there was no necessity for filling up the assignment at the time of the trial, though of course there was no error in permitting the assignment to be then filled up.
The fourth error assigned is, that “ the court erred in permitting the boundaries of the prison bounds to be given in evidence, without having been recorded as the statute directs.”
The statute referred to by the counsel of the plaintiff in error, 1 Rev. Code 1819, p. 251, § 18, requires the marks and bounds of the prison rules, directed to be laid out by the justices of every county and corporation, to be recorded, but does not prescribe the particular book in which they are to be recorded. The marks and bounds in this case were entered only on the order book of Wood county court, but having been entered therein as part of one of the regular orders of the court, and the order book being certainly a record book, they were recorded within the meaning of the statute.
The fifth error is, that “ the court erred in admitting the deposition taken before A. Samuels, Esq. to be read, inasmuch as a commissioner in chancery has no authority to take a deposition in a law cause.”
It perhaps would be a sufficient answer to this objection to say that the said deposition was taken “ in *180 the presence of the counsel of both plaintiff and defendants, and by consent to be read in chief.” But a better answer is that when the deposition was taken a commissioner appointed by a Circuit superior court to take depositions (as A. Samuels was) had authority to take a deposition in a law cause; the act of April 1831-providing for the appointment of such commissioners, authorizing them “ to take the depositions of witnesses in any cause depending in their courts;" Supp. Rev. Code, p. 165, § 80; and the act of February 1834 declaring “ that the depositions of witnesses in suits depending in any court of this commonwealth, may hereafter be taken, &c. by any commissioner appointed by any Circuit superior court, &c. for the taking of depositions.” Acts of 1833-4, p. 75, ch. 62, § 2.
The sixth and last error is, that “ the court erred in instructing the jury that under the circumstances of this case the true measure of damages was the debt and interest; and consequently erred in refusing to give the instruction asked for by the defendants’ counsel.”
The prison bounds bond in Virginia is, as we have seen, not a mere bond of indemnity to the sheriff, but, when it is assigned to the creditor according to law, becomes a substantial security for the debt: That was evidently contemplated by the statute. The imprisoned debtor having availed himself of the liberties of the prison on the terms prescribed by the statute, and having departed from the said liberties and broken his bond, the creditor has his election to pursue and retake the debtor, or to abandon his execution as having become abortive by the act of the debtor, and resort to an action on the bond “ for the recovery of his debt.” The amount of the debt seems to be recognized by the very language of the statute as the measure of the recovery- on the bond. To depart from that certain standard would be unreasonable and embarrassing. The *181 opinion of the profession has, I think, universally been in favor of that standard. It has never been affirmed to be the true standard by this court; but that, I think, is only because its propriety has never before been seriously questioned. The subject has, however, come under the consideration of the courts of several of our sister states, whose decisions are entitled to very great respect. In Kentucky, where the law on this subject is, or rather was, similar to or identical with ours, the subject came under consideration in the case of Hubbard v. Harrison, 1 Bibb’s R. 550, which was an action brought on a prison bounds bond in the name of the assignee of the sheriff. The defendant in the court below endeavored to maintain, by a plea which the court rejected, and a prayer for an instruction which the court refused to give, that the plaintiff had sustained no damage by the departure of the debtor from the prison bounds. The Court of appeals, in reference to that part of the case, used this strong language: “ The third general head embraces the two sham pleas offered by the defendants, and the motion for an instruction to the jury, which embraced the same matter offered in one of those sham pleas. The court below entertained very correct ideas of these matters, and this court might well pass them by without further remark. They will, however, observe, for the information and satisfaction of the attorney who moved them, that by a breach of the condition of the bond by Newhouse, the bond became a security for the debt adjudged against Newhouse in favor of the plaintiff in that action, as also for the interest and costs therein adjudged.” I make the above quotation to show how well satisfied the court was in regard to the question under consideration ; but it may be proper to say that I do not mean to apply to this case so much of the opinion as implies that the question was too plain to be raised. Por although I am decidedly of opinion that the ques *182 tion should be solved in favor of the plaintiff in the court below, I yet think it admitted of sufficient doubt to be raised; especially after the decision of the case in 9th Leigh, hereafter to be mentioned. In the case of Burroughs v. Lowder, 8 Mass. R. 373, which was an action on a prison bounds bond, the question was decided in the same way. The court in its opinion said, “ We consider this point as put at rest in the cases referred to; nor is it unreasonable. The debtor’s body is considered as a pledge for his debt. It is not for him to say the pledge was inadequate. If the sheriff is liable for the escape, it is clear that he must be answerable in the sum for which the debtor was held a prisoner.” A similar decision was made by the Supreme court of errors of Connecticut in Seymour v. Harvey, 8 Conn. R. 63; and also by the Supreme court of New York in the case of Mandell v. Barry, 9 John. R. 234; although that case was afterwards reversed by the Court of errors, but on grounds arising out of the peculiar nature of their statute law of escapes, as before stated. The case of Perkins v. Giles, 9 Leigh 397, is relied on by the counsel of the plaintiffs in error. But that was an action on the official bond of the sheriff, and by the express terms of the statute giving a right of action on such bond to any person injured by the breach of the condition thereof, the recovery in such case can only be of such damages as the relator may have sustained by reason of such breach. And I therefore think that it does not apply to this case.
For the foregoing reasons, I am for affirming the judgment.
The other judges concurred in the opinion of Moncure, J.
Judgment affirmed.